UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHANAI MCCLUSKEY,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

Case No. 3:17-cv-05554-JLR-TLF

REPORT AND RECOMMENDATION

Noted for March 2, 2018

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On August 22, 2013, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning February 20, 2012. Dkt. 8, Administrative Record (AR) 20. The applications were denied on

REPORT AND RECOMMENDATION - 1

1   initial administrative review and on reconsideration. *Id.* A hearing was held before an

2   administrative law judge (ALJ) at which plaintiff appeared and testified as did a vocational

3   expert. AR 38-67.

4         In a decision dated March 23, 2016, the ALJ followed the Commissioner's five-step

5   disability evaluation process, finding in favor of plaintiff at the first four steps. AR 20-30. The

6   ALJ found plaintiff had severe impairments consisting of an anxiety disorder, posttraumatic

7   stress disorder, and a depressive disorder; the ALJ also found that Ms. McCluskey suffered from

8   non-severe impairments – fibromyalgia, cervical disc protrusions, and multiple sclerosis. AR 22-

9   23. The ALJ determined at step five that plaintiff could perform other jobs existing in significant

10  numbers in the national economy and therefore she was not disabled. AR 30-31.

11        Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on

12  May 15, 2017, making that decision the final decision of the Commissioner. AR 1; 20 C.F.R. §

13  416.1481. Plaintiff then appealed in a complaint filed with this Court on July 24, 2017. Dkt. 4.

14  Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, arguing the

15  ALJ erred in evaluating the opinion evidence from examining psychologist, Peter Weiss, Ph.D.,

16  in discrediting plaintiff's subjective complaints, and in rejecting the lay witness evidence from

17  plaintiff's aunt.

18        For the reasons set forth below the undersigned recommends the decision to deny

19  benefits be reversed. There is ambiguity in the record and serious doubt as to whether plaintiff is

20  disabled. Thus, the undersigned recommends the Court remand this matter for further

21  administrative proceedings, rather than an award of benefits.

22                          STANDARD AND SCOPE OF REVIEW

23        The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error;

24  or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648,

25

REPORT AND RECOMMENDATION - 2

1  654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

2  accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir.

3  2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.

4  1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the

5  evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

6      If more than one rational interpretation can be drawn from the evidence, then the Court

7  must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is,

8  "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must

9  affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting

10  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court, however, may not affirm by

11  locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v.*

12  *Astrue,* at 630.

13      The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759

14  F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports, and

15  evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision

16  of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified

17  by the ALJ are considered in the scope of the Court's review. *Id.*

18  I.    <u>Dr. Weiss's Opinion</u>

19      Plaintiff challenges the ALJ's non-disability determination on the basis that the ALJ

20  provided insufficient reasons for rejecting the opinion evidence from Peter Weiss, Ph.D., an

21  examining psychologist.

22      Dr. Weiss conducted a psychological evaluation of plaintiff in February 2015, opining

23  that Ms. McCluskey was severely limited in her ability to: perform activities within a schedule,

24

25

REPORT AND RECOMMENDATION - 3

1  maintain regular attendance, and be punctual with customary tolerances without special

2  supervision; maintain appropriate behavior in a work setting; complete a normal work day and

3  work week without interruptions from psychologically based symptoms; and set realistic goals

4  and plan independently. AR 504. The ALJ gave Dr. Weiss's opinion "little weight" because: (1)

5  "the extreme limitations" he assessed "are not consistent with his own findings"; and (2) while

6  plaintiff was unable to perform serial three or serial seven subtractions for Dr. Weiss she could

7  do so during an earlier February 2014 psychiatric evaluation, and "[t]here is no evidence to

8  suggest that she had suffered a significant decline in cognitive functioning during the period

9  between these two evaluations." AR 28.

10       The ALJ is responsible for determining credibility and resolving ambiguities and

11 conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where

12 the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions

13 solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations,

14 "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d

15 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or

16 are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical

17 opinions "falls within this responsibility." *Id.* at 603.

18       In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

19 "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this

20 "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

21 stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences

22 "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may

23 draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881

24

25

1  F.2d 747, 755 (9th Cir. 1989).

2      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

    There are several categories of medical professionals that typically provide opinion and other evidence that is reviewed during the Social Security application and appeal process. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). These include licensed physicians or psychologists: (1) who treat the claimant; (2) who examine but do not treat the claimant; and (3) who neither treat nor examine the claimant, but review medical records and other information. *Molina v. Astrue,* 674 F.3d 1104, 1111-12 (9th Cir. 2012); *Lester,* 81 F.3d at 830; *Gomez,* 74 F.3d at 971; 20 C.F.R. § 404.1513(a)-(d), § 404.1529(a),(c), § 416.913. Also included are: other "acceptable medical sources" who are medical professionals but who are not licensed physicians or psychologists; and other, non-medical sources. *Leon v. Berryhill,* 874 F.3d 1130, 1133-34 (nurse practitioner is an acceptable medical source for claims filed after March 27, 2017, under updated regulation 20 C.F.R. § 404.1527 and § 416.920(c)); *Popa v. Berryhill,* 872 F.3d 901, 906 (9th Cir. 2017) (treatment

provider with a PhD in nursing was an "other source" under the pre-March 27, 2017 regulation even though she was the primary treating medical provider for plaintiff).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

In Ms. McCluskey's case, the ALJ's reasons for rejecting Dr. Weiss's opinion are legally insufficient. The ALJ correctly notes that Dr. Weiss's mental status examination findings are largely unremarkable, and that plaintiff performed serial three and serial seven subtractions without apparent problems during the earlier 2014 evaluation. AR 426, 505-506.

It appears the ALJ's first reason for discounting the opinion of Dr. Weiss was because the ALJ thought Dr. Weiss largely relied on plaintiff's self-reported subjective testimony about her experience regarding severity of symptoms – and the ALJ found that this testimony of Ms. McCluskey was not credible. AR 26-27; *see generally, Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*,

1 | 169 F.3d 595, 602 (9th Cir. 1999)).

2 |     The Ninth Circuit, however, has cautioned that because "[p]sychiatric evaluations may
3 | appear subjective, especially compared to evaluation[s] in other medical fields," "the rule
4 | allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to
5 | opinions regarding mental illness." *Buck*, 869 F.3d at 1049. This is because "the nature of
6 | psychiatry" is such that "[d]iagnoses will always depend in part on the patient's self-report, as
7 | well as on the clinician's observations of the patient." *Id.* ("[U]nlike a broken arm, a mind cannot
8 | be x-rayed.") (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)).

9 |     In this case, Dr. Weiss reasonably relied on plaintiff's self-report. AR 502-503. In
10 | addition, Dr. Weiss also found at least some abnormal mental status examination findings,
11 | including depression and an anxious affect, in addition to an inability to perform serial three and
12 | serial seven subtractions. AR 505-506.

13 |     And, as discussed below, ALJ's reasons for discounting plaintiff's credibility – regarding
14 | the severity of her symptoms – were legally insufficient. Even though the "objective" clinical
15 | findings considered by Dr. Weiss may not, standing alone, be remarkable overall, Dr. Weiss
16 | nevertheless believed (based on Ms. McCluskey's self-report and Dr. Weiss's own observations)
17 | that she had significant mental functional limitations; Dr. Weiss assessed the limitations *despite*
18 | expressly noting plaintiff "consistently endorsed items in a manner that presented her in a
19 | negative or pathological light," resulting in "considerable distortion" in the test results "that
20 | would dramatically overestimate her level of psychological distress." AR 501.

21 |     Dr. Weiss's opinion, furthermore, was affirmed by Daniel Neims, Psy.D., a non-
22 | examining psychologist. Dr. Neims found that Dr. Weiss's evaluation report was "[w]ell
23 | elucidated . . . with strong support for [sic] provided diagnostic formulation," and that it

24

25

REPORT AND RECOMMENDATION - 7

1 appeared to be supported by objective medical evidence. AR 496. Given this and "the relative
2 imprecision of the psychiatric methodology," the absence of greater objective clinical findings in
3 this instance was not a sufficient basis on which to reject Dr. Weiss's opinion. *Buck*, 869 F.3d at
4 1049 (citations omitted).

The ALJ gave a second reason for rejecting Dr. Weiss's opinion – that there is no evidence to suggest plaintiff suffered a significant decline in cognitive functioning between Dr. Weiss's evaluation and the one performed in February 2014. This reason is legally insufficient because it does not fully and fairly capture the diagnostic picture in this case. The ALJ also acknowledged, however, that plaintiff reported at least three occasions of suicidal ideation in January, April, and August 2014, two of which resulted in visits to the emergency room. AR 441, 448, 461-472, 477-481. Treatment notes recorded during or around that period show fairly normal mental status examination findings with two reports – one in January 2014 and the other in April 2014 – that plaintiff was doing well on medication. AR 27, 441-442, 444-445, 447-448, 468, 478.

The ALJ characterizes the suicide ideations – as well as similar incidents that occurred before and after that period in July 2013, and March 2015, including a suicide attempt (AR 325, 644) – as "brief periods of decline" (AR 27). Yet these suicidal thoughts and acts occurred over a several year period, which means that the record as a whole suggests the presence of a far more serious condition. The medical records covering 2012, 2013, and 2015 – though again containing mostly unremarkable mental status examination findings with some, occasional improvement – reveal reports of plaintiff continuing to be symptomatic in terms of her depression, anxiety, and PTSD, despite treatment. AR 317-25, 326-332, 399, 403, 450-458, 641-646.

1    The record thus contains evidence of greater mental functional limitations – as found by
2 Dr. Weiss and Dr. Neims – than the "objective" findings concerning successful treatment with
3 medication, standing alone, might show. In addition, the Court notes that Ms. McCluskey was
4 diagnosed with multiple sclerosis in October of 2015 and started treatment for that disease on
5 November 18, 2015. AR 585, 590, 595, 605.  The ALJ's analysis of Ms. McCluskey's
6 limitations based on symptomsincluding psychological and physical manifestations of
7 neurological problems, mental illness or defect, and other medical conditions does not
8 adequately or fairly address the medical evidence in the entire longitudinal record.

II.    The ALJ's Reasons for Discounting Plaintiff's Testimony Concerning the Severity of Her Symptoms Are Legally Insufficient

Ms. McCluskey argues that the ALJ failed to properly assess her credibility concerning the severity of symptoms she experienced and continues to experience as of the date of the hearing. The defendant does not assert that Ms. McCluskey is malingering. The ALJ did not explain any specific or clear and convincing reasons to reject Ms. McCluskey's testimony about her severe symptoms and therefore the Court should reverse and remand on this issue.

Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The Court should not "second-guess" the ALJ's credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that

1  determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the

2  reasons for discrediting a claimant's testimony are properly discounted, that does not render the

3  ALJ's determination invalid, as long as that determination is supported by substantial evidence.

4  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

5       In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

6  credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

7  symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,

8  1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of

9  physicians and other third parties regarding the nature, onset, duration, and frequency of

10  symptoms. *Id.*

11       The ALJ offered two reasons for finding plaintiff to be less than fully credible concerning

12  her subjective complaints: symptom improvement with treatment and inconsistency between her

13  activities and her endorsement of social functional limitations. AR 26-27. As to the first reason, a

14  claimant's subjective complaints may be discounted based on medical improvement *Morgan*,

15  169 F.3d at 595; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). As discussed above, though,

16  the ALJ's characterization of the treatment record fails to adequately capture the extent to which

17  plaintiff's significant mental health symptoms appear to have continued, resulting in several trips

18  to the emergency room, despite the presence of treatment.

19       As for activities, the undersigned agrees with plaintiff that those the ALJ relied on to find

20  her not credible, do not by themselves necessarily indicate an ability to maintain adequate social

21  functioning in a work place. For example, the ALJ noted that plaintiff interacted socially on the

22  phone every day, attended church on a weekly basis, lived with her family and later resided with

23  her boyfriend and a roommate, had good relations with her friends and neighbors, went grocery

24

25

REPORT AND RECOMMENDATION - 10

1  shopping every two weeks, and interacted appropriately with various treatment providers. AR

2  27. The nature, frequency, and extent of these activities are such, however, that even those with

3  serious limitations in social functioning could be expected to engage in them. *Reddick v. Chater*,

4  157 F.3d 715, 722 (9th Cir. 1998) ("[C]laimants should not be penalized for attempting to lead

5  normal lives in the face of their limitations.").

6      The ALJ, however, expressly pointed out that he was limiting plaintiff to work with only

7  minimal social demands, no public contact or teamwork, and only superficial contact with co-

8  workers, and that the activities listed above are consistent with those limitations. AR 25, 27.

9      Yet those limitations recognized by the ALJ do not respond in any manner whatsoever to

10  plaintiff's allegations regarding: experiencing shakiness that makes it extremely difficult to lift

11  objects, dizziness, brain fog, falling and muscle spasms, blurry vision, tunnel vision, numb legs,

12  difficulty with memory, taking pain management medications to address her medical conditions

13  such as fibromyalgia, having lesions on her brain from multiple sclerosis, fatigue, flashbacks of

14  child abuse that she experienced between ages three and eleven, crying all day when she worked,

15  becoming so depressed that she loses her will to get off the couch, and becoming easily

16  overwhelmed "by the littlest things," let alone her difficulties in completing tasks and following

17  instructions. Compare AR 26-27 (ALJ's findings concerning Ms. McCluskey's testimony about

18  symptoms) with AR 48-51, 55-56, 61-63 (Ms. McCluskey's testimony). The ALJ's credibility

19  determination does not address any of those symptoms, and therefore this reason does not form

20  an adequate basis for discounting all of plaintiff's testimony about symptoms that she

21  experiences.

22  III.    <u>The ALJ Erred in Rejecting the Statement from Plaintiff's Aunt</u>

23      The record contains a statement from plaintiff's aunt, Crystal Shepherd, for whom

24

25

REPORT AND RECOMMENDATION - 11

plaintiff worked for approximately four years. AR 310. While Ms. Shepherd stated that plaintiff "worked roughly 30-40 hours per week" during this period, she also stated that plaintiff would experience flashback attacks where "she would burst into tears and run from the room." *Id.* Ms. Shepherd stated that plaintiff's "crying and sobs would be non-stop and was best at this point to use a 'mental health' day and let her leave for the day." *Id.* "These attacks would happen as often as three times a month," and "[a]t times . . . would last for several days in a row and sometimes would be spread out over the month." *Id.* According to Ms. Shepherd, "[o]nly once" was plaintiff "able to come back to work after having one of these attacks," and even that time she could do so only "after much persuasion." *Id.*

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

The ALJ gave Ms. Shepherd's statement "little weight" because plaintiff "was able to work when she was present and the earnings records indicate that she was able to work at the level of substantial gainful activity." AR 30. The ALJ also relied on Ms. Shepherd's statement that plaintiff was terminated "for financial reasons unrelated to [her] symptoms and/or need to be accommodated," which suggests plaintiff's symptoms were not as severe as alleged. AR 30, 311. Plaintiff argues, and the undersigned agrees, these reasons form an insufficient basis to give only

REPORT AND RECOMMENDATION - 12

little weight to Ms. Shepherd's statement.

The ALJ's analysis ignores the fact that although she may have earned at the substantial gainful activity level and eventually was terminated for non-impairment related reasons, she still needed to be accommodated while she worked for her aunt. This apparently included, as noted above, allowing "mental health" days as often as three times a month, due to flashback attacks that could last for several days in a row. It seems highly unlikely that an employer unrelated to plaintiff would be so accommodating. Indeed, the vocational expert testified that an individual who misses two or more days a month would not be likely to sustain competitive employment. AR 66. As such, the ALJ's error here is not harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless where it is non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion).

IV.     Remand for Further Administrative Proceedings Is Warranted

Although the ALJ's reasons for rejecting the medical opinion evidence of Dr. Weiss, for rejecting claimant's credibility, and for discounting the lay witness testimony, were legally insufficient, the district court should not remand with a direction to award benefits. Issues remain as to Ms. McCluskey's RFC and her ability to perform other jobs existing in significant numbers in the national economy. The existing record is unclear. The undersigned recommends a remand for further proceedings to determine whether plaintiff is disabled.

A claimant's RFC assessment is used at step five of the Commissioner's sequential disability evaluation process to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2. RFC is what the claimant "can still do despite his or her limitations," and is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.*

Further, at step five the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). An ALJ's step five determination will be upheld if the weight of the evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of that evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

In terms of plaintiff's RFC, the ALJ found she could perform a full range of work at all exertional levels. AR 25. In addition, the ALJ found plaintiff had the following non-exertional limitations:

> **[She] would be capable of understanding and remembering instructions and procedures, and of maintaining concentration, persistence, and pace throughout a normal workday and workweek. She is best suited to work with minimal social demands including no public contact and only superficial contact with her co-workers not involving teamwork. [She] also has the ability to take appropriate precautions in hazardous situations and utilize transportation but may have difficulties adapting to changes/stress in the workplace, but not to the point of precluding all work.**

AR 25 (emphasis in the original). The ALJ then found plaintiff could perform other jobs existing in significant numbers in the national economy at step five, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 30-31.

But because as discussed above the ALJ erred in failing to give sufficient reasons for rejecting the medical opinion and lay witness evidence in the record and for finding plaintiff to

REPORT AND RECOMMENDATION - 14

be not fully credible concerning her subjective complaints, the ALJ's RFC assessment – and thus the hypothetical question the ALJ posed to the vocational expert – cannot be said to completely and accurately describe all of plaintiff's functional limitations. Accordingly, the ALJ improperly relied on that RFC assessment and the vocational expert's testimony to find plaintiff capable of performing other jobs existing in significant numbers in the national economy and therefore not disabled at step five.

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.2d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, No. 15-15277, slip. op. at 8 (9th Cir. Jan. 25, 2018). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only "where '(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Trevizo*, 871 F.2d at 682-83 (quoting *Garrison v, Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit has recently applied the "credit-as-true" rule by first asking: Were the ALJ's reasons for rejecting the evidence legally insufficient? *Leon*, slip op. at 7-8.  Then, having

answered that question in the affirmative, the Court considered the second step in the analysis: Are there remaining issues that must resolved before a disability determination can be made, and would further administrative proceedings be useful? *Id.* The Court confirmed that the third step would result in an award of benefits only if the questions at parts one and two of the analysis are answered yes – and crediting the improperly discredited evidence as true, further proceedings would appear to be unnecessary. *Id.*

The Court in *Leon* held, even where the district court finds in the first part of the analysis that the ALJ has failed to offer sufficient reasons for rejecting evidence, and also finds in the second part of the analysis that there is "a fully developed record without any conflicts, gaps, or ambiguities," and finally reaches the third part of the analysis and credits the rejected evidence as true – it is still within the court's discretion whether to remand for further proceedings, or to remand for award of benefits. *Leon,* slip op. at 11-12. If, considering the record as a whole, there are reasons for the district court to have serious doubt as to whether the claimant is disabled – the district court retains discretion to remand to the agency for additional proceedings. *Id.* at 13; *Revels,* slip op. at 39.

Here, the ALJ gave legally insufficient reasons for rejecting the opinion evidence from Dr. Weiss and the lay witness statement from plaintiff's aunt, and for discounting plaintiff's credibility concerning her testimony about the severity of symptoms she experiences from the diagnosed diseases, conditions and disorders. Further, these errors undermine the ALJ's RFC assessment and determination that plaintiff would be able to perform other jobs (the analysis performed at step five of the Commissioner's disability evaluation process).

Although plaintiff argues that the Court should remand for an outright award of benefits, the undersigned recommends a remand because it is far from clear that the ALJ would be

REPORT AND RECOMMENDATION - 16

required to adopt all of the limitations indicated by the improperly-rejected evidence. Serious doubt remains as to whether plaintiff is in fact disabled. Remand for further proceedings, therefore, is appropriate.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly determined plaintiff to be not disabled, and therefore that it reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **March 2, 2018**, as noted in the caption.

Dated this 12th day of February, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge